**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **HUGO BASTAN and DRAGADOS Y MANIOBRAS MARITIMAS DE TUXPAN, S.A DE C.V.** § § § § | | |
| Plaintiffs, § | | |
| § | | |
| VS. § | CIVIL ACTION 1:21-cv-_____ | |
| § | | |
| **THE CONTINENTAL INSURANCE COMPANY, RSG SPECIALTY, LLC. (f/k/a RT SPECIALTY, LLC), SALIKHA BERKOVICH,** Individually and d/b/a **ABA INSURANCE AGENCY** and **BIZ ACTION INSURANCE AGENCY, UNDERWRITING ENTERPRISES, INC. , THOMAS PEPPER,** Individually, and **JOHN UHR,** Individually, § § § § § § § § § § § | | |
| Defendants. § | | |

## ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

COMES NOW, Hugo Bastan and Dragados y Maniobras Maritimas de Tuxpan, S.A de C. V., Plaintiffs herein and file this Original Complaint and would show unto the court as follows:

1. Plaintiff, Hugo Bastan is a citizen and resident of Mexico.

2. Plaintiff, Dragados y Maniobras Maritimas de Tuxpan, S.A de C. V. is a Mexican corporation with its principal office being in Tuxpan, Veracruz, Mexico.

3. Defendant, The Continental Insurance Company (hereafter "Continental Insurance"), is an Illinois company conducting business in the State of Texas and may be served with citation by serving its registered agent, CT Corporation, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

1

4. Defendant, RSG Specialty, LLC, formerly known as RT Specialty, LLC. (hereafter "RT Specialty") is an Illinois limited liability company, with its principal place of business being in Chicago, Illinois and may be served by serving its registered agent CT Corporation, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Said Defendant has qualified to conduct, and does conduct, business in the State of Texas. At all material times related to the insurance provided herein, Plaintiff was dealing with Thomas Pepper, an agent with said RT Specialty at its offices located at 820 Gessner Road, Suite 1850, Houston, Harris County, Texas.

5. Defendant, Thomas Pepper (hereafter "Pepper"), is an insurance agent/broker who, at all times material to this case, resided and worked in Harris County, Texas and may be at his place of employment at 820 Gessner Road, Suite 1850, Houston, Harris County, Texas. Pepper is being sued in his individual capacity.

6. Defendant, Salikah Berkovich, individually, and d/b/a ABA Insurance Agency and Biz Action Insurance Agency (hereafter collectively "ABA Agency") is believed to be a sole proprietorship owned and operated by Salikah Berkovich, who may be served at her office address at 16-00 Route 208 South, Suite 193, Fair Lawn, New Jersey 07410.

7. Defendant, Underwriting Enterprises, Inc. (hereafter "Underwriting Enterprises"), is a New Jersey corporation, with its principal place of business being in Fair Lawn, New Jersey and may be served by serving its registered agent John B. Uhr, at 30-04 Broadway, Fair Lawn, New Jersey 07410.

8. Defendant, John Brendan Uhr (hereafter "Uhr"), individually and d/b/a Underwriting Enterprises, Inc. is believed to be a resident of New Jersey. He may be served at his place of employment at 13-331 River Road, Fair Lawn, New Jersey 07410. Uhr is being sued in his individual capacity.

## JURISDICTIONAL STATEMENT

8. Federal Jurisdiction is present in this court pursuant to Article 3, Section 2 of the United States Constitution vesting admiralty jurisdiction. Plaintiffs file this action under the saving to suitor's clause and hereby invoke jurisdiction on the "law side" of this court for the purpose of having a jury trial. Therefore, jurisdiction is alternatively invoked pursuant to 28 U.S.C. Section 1332 (Diversity Jurisdiction). Venue in this district exists pursuant to 28 U.S.C. Section 1391.

## FACTUAL BACKGROUND

9. Plaintiff, Dragados y Maniobras Maritimas De Tuxpan, S.A de C. V. ("Dragados") is a Mexican corporation which owns and operates a fleet to tug boats, work boats and barges in Mexico. Many of the work boats purchased by Dragados were acquired in the United States. As the owner of the fleet of work boats, and when it was necessary to come to the United States for the purpose of repairing its vessels, Dragados would sometimes bring its vessels to a shipyard in Morgan City, Louisiana. Dragados had once indicated to the shipyard owner that the company was in need of obtaining insurance for its operations. Dragados was subsequently contacted by ABA Agency, through its agent Uhr, who offered to obtain for Dragados the insurance policies necessary to provide the insurance coverage which would be necessary for its operations.

10. Beginning in September 9, 2017, Dragados obtained a comprehensive Marine Liability/Stevedore's Legal Liability/Wharfinger's Legal Liability policy under Policy No. 9780495 (the "Initial Policy"). The Initial Policy was issued by Continental Insurance and obtained by ABA Agency and Uhr through a marine insurance broker, U.S. Risk, Inc., with its offices being in Houston, Texas. The term of the Initial Policy was from September 7, 2017 through September 7, 2018.

11. Dragados purchased the push boat "TLC EXPLORER," Official No. 556968 (the "Vessel") on or about June, 2017 for the consideration of $217,500.00. Since the date of the acquisition of the Vessel through the time of the casualty, Dragados utilized due diligence to keep and maintain the Vessel in a seaworthy condition. The Vessel was lifted on the Morgan City, Louisiana shipyard railway for inspection and servicing in May-June 2018 and was concurrently subjected to a Marine survey. At all material times relevant to this lawsuit, Dragados was, and is, the owner of the Vessel.

12. In 2018, Dragados requested from ABA Agency and Uhr to purchase marine hull insurance to cover all of its tug boats, work boats and barges and marine protection and indemnity insurance to provide coverage for its crews. ABA Agency and UHR undertook to submit the necessary applications to obtain the requested insurance. On or about May 8, 2018, Continental Insurance bound coverage under Policy No. H877499 (the "Hull Policy") for certain vessels then owned by Dragados. On the same date, Continental Insurance also bound coverage for Dragados (i) a Protection and Indemnity Policy under Policy No. H0875856 for coverage in the amount of $1,000,000.00 (the "P&I" Policy) with a $5,000.00 deductible and (ii) a Marine General Liability Policy under Policy No. ML9780508 (the "General Liability" Policy). The Hull Policy, P&I Policy and General Liability Policy are hereafter collectively referred to as the Insurance Policies.

13. The Hull Policy, P&I Policy and General Liability Policy were each issued by Continental Insurance through RT Specialty, LLC, ("RT Specialty"), with Thomas Pepper ("Pepper") being the individual who handled the transaction on behalf of the parties. Upon information and belief RT Specialty and Pepper were contacted by ABA Agency and Uhr. The Hull Policy, P&I Policy and General Liability Policies (collectively the "Insurance Policies")

3

were obtained by and through RT Specialty.

14. At the time of the binding of the coverage, and the subsequent issuance and delivery of the Insurance Policies, none of the Defendants disclosed to Dragados that on October 20, 2016 the Louisiana Department of Insurance had issued a notice of Violation and Commissioner's Action against Uhr and subsequently on October 11, 2017 the Louisiana Department of Insurance had issued a Cease and Desist Order and Civil Fine against Uhr, which actions ordered Uhr to cease and desist from acting as or holding himself out to be an insurance producer in the state of Louisiana. The Insurance Policies on their face reflect the mailing address of Dragados to be Morgan City, Louisiana.

15. Dragados did not become aware of the Cease and Desist Order against Uhr until July 31, 2019.

16. In August, 2018, Dragados requested that additional vessels be added to the terms of the Insurance Policies and on August 27, 2018, ABA Agency issued a Certificate of Liability Insurance indicating that the requested insurance coverage had been bound. Apparently, the Certificate was issued because, on August 20, 2018, Continental Insurance issued Endorsement No. 4, effective August 16, 2018, adding the TLC EXPLORER (the Vessel) to the coverage within of the Hull Policy and P&I Policy, with the Vessel having a stipulated value of $250,000.00, with a $10,000.00 deductible. The same Endorsement No. 4 added nine other vessels to the coverage afforded by the Insurance Policies. Dragados was informed that the cost of insurance would be $51,077.73 and was in agreement for the Endorsement No. 4 to be issued. The policy period term of the combined policies was from May 8, 2018 to May 8, 2019.

17. With the inclusion of the Vessel into the terms of the Hull Policy and P&I Policy as a result of Endorsement No. 4, the Hull Policy issued by Continental Insurance covered the whole of the Vessel. At all material times incident to the risk which attached to the Vessel, Dragados complied with all of the terms and conditions of the Hull Policy and P&I Policy and General Liability Policy.

18. The insurance coverage was bound by Continental Insurance through its producer, RT Specialty, LLC. and Pepper. At the time of acquisition of the insurance, Dragados inquired about the payment terms for the insurance premiums and was told by ABA Agency that (i) it had arranged for Dragados would need to make a premium down-payment and that the balance of the premium payments would be paid pursuant to premium invoices would thereafter be sent to Dragados for payment. When such insurance coverage was initially bound in May 2018, Dragados also asked when it would receive the Insurance Policies. Uhr indicated that it usually took about 30-45 days to receive the actual Insurance Policies.

19. When it initially purchased the insurance from Continental Insurance, Dragados was directed by ABA Agency and Uhr to make the insurance premium payments to their affiliated company, Underwriting Enterprises, Inc, which was located in the same office as ABA Agency. The assertion that the premiums should be paid in that manner was subsequently affirmatively confirmed by Pepper at the Houston meeting (as hereafter described). From the

4

time of the inception of the Insurance Policies thru the date of the loss of the Vessel, Dragados paid every invoice presented to it for the payment of the insurance premiums. Dragados was instructed by ABA Agency to wire transfer the premium payments to a bank account in the name of Underwriting Enterprises, Inc.

20. By September, 2018, Dragados still had not received the Insurance Policies and was beginning to become concerned because it had already paid quite a bit of money in the form of payment for the premiums on the Insurance Policies. ABA Agency and Uhr continued to assure Dragados that the insurance coverage had been bound and that the Insurance Policies would be delivered to Dragados. Nevertheless, on September 14, 2018, Dragados sent its representative to meet with Pepper at the RT Specialty offices in Houston, Harris County, Texas. The purpose of the meeting was to (i) obtain proof that the insurance coverage for the additional vessels had been bound, (ii) request the delivery of the Insurance Policies, and (iii) verify that all of the necessary premium payments from Dragados had been received. At such meeting, Pepper confirmed to the Dragados representative that all of the insurance coverage afforded by the Hull, P&I and General Liability Policies was in place. He also indicated that the addition of the additional vessels had increased the annual premium cost to $51,404.43. The Dragados representative informed Pepper that the premium increase had been previously discussed with ABA Agency and that the premium cost was acceptable. The Dragados representative also reviewed with Pepper the manner of payment by Dragados of the premium invoices wherein as the premium invoices were being received by Dragados, Dragados would wire transfer the premium payments to the Underwriting Enterprises, Inc. bank account. Pepper informed him that this was the procedure was acceptable and that the payments sent by Dragados would, in turn, be sent and paid to keep the insurance in place and that Dragados should continue to follow that same payment procedure and make sure that the payments were timely paid. At that meeting on September 14, 2018, RT Specialty issued and delivered Endorsement No. 4 (REVISED), effective August 16, 2918, indicating the foregoing described addition of the additional vessels to the terms of the Insurance Policies. At the meeting Pepper, on behalf of RT Specialty, signed and delivered a letter to Dragados confirming that he had placed the coverage.

21. In February 2019, the Vessel had been working around the Port of Matamoros, Tamaulipas, Mexico pushing the Barge M206 (the "Barge"), a 110-foot barge also owned by Dragados. On the evening of February 17, 2019, the Vessel and Barge were moored and secured for the night at their usual berthing facility. The next morning a strong windstorm hit the area. The captain and crew were on the Vessel and around 9 am on the morning of February 18, 2019, the ropes securing the Vessel and the Barge parted.

22. The windstorm, coupled with a strong current, carried the Vessel and Barge away from their mooring facility. The captain and crew called for assistance to help them rescue the Vessel and Barge. Because of the high wind conditions, a portion of the Barge had become lodged itself under the corner of the bow of the Vessel and was causing the stern of the Vessel to be pushed under the level of the water and waves. Water was entering the engine room of the Vessel. Once the water began to enter into the engine room the Vessel began to sink at an accelerated rate. The captain and crew were able to extract the bow of the Vessel from underneath the Barge, but, by that time, too much water had entered the Vessel's and flooded the

engine room in such a volume that the Vessel began to sink by the stern. The Vessel sank in an area with approximately 9 meters of depth. The Vessel sank approximately 200 meters from the dock.

23. Upon the sinking of the Vessel, Dragados undertook to implement all necessary precautions in order to prevent the Vessel from suffering further loss, from becoming a hazard to navigation and from dispersing pollutants into the waters of the bay. On the same date of the sinking, the Captain of the Port of Matamoros issued a directive to remove the Vessel because it constituted a hazard to navigation. Upon the sinking of the Vessel, Dragados contacted ABA Agency and Uhr to inform them of the casualty loss and to request that the necessary paperwork be filed with Continental Insurance as the underwriter.

24. On February 23, 2019, Uhr sent a Property Loss Notice to Continental Insurance to inform it of the incident. On March 1, 2019, Continental Insurance formally acknowledged the receipt of the claim.

25. The salvage efforts on the Vessel began almost immediately after the sinking. By February 20, 2019, the Vessel's owner had undertaken to secure air bags, cranes, divers and additional tug boats in order to assist in the salvage activities. All of the equipment and personnel were made available. The winds and currents carried the Vessel from its original sinking area to an area blocking the entrance of the Port of Matamoros. The Captain of the Port of Matamoros issued and order requiring the removal of the Vessel from the Port facilities because it caused a danger to navigation and pollution. The salvage efforts took approximately 35 days to complete. The Vessel was finally raised on or about March 28, 2019. The Vessel was then towed to Tampico, Tamaulipas for repair.

26. The cost of the salvage of the Vessel is $344,326.12. The current estimated cost to repair the Vessel is $241,004.79. Therefore, as a result of this incident, the Vessel is a constructive total loss. The insured value of the Vessel is $250,000.00 with a Hull Policy deductible of $10,000.00.

27. The Vessel was seaworthy at the inception of the risk on August 16, 2018. Furthermore, the owner of the vessel utilized due diligence to maintain the vessel in a seaworthy condition during the term of the policy. Hugo Bastan/Dragados y Maniobras Maritimas de Tuxpan, S.A. de C.V., as the insureds/owner of the vessel, did not knowingly permit the Vessel to begin any voyage in an unseaworthy condition and utilized due diligence to maintain the Vessel in a seaworthy condition during the term of the Insurance Policies.

28. The cause of the loss of the Vessel falls within the covered perils enumerated between lines 70 through 86 of the Hull Policy. Furthermore, the undersigned under took all reasonable actions under the *sue and labor* provisions (lines 144 through 157) of the Hull Policy to recover the vessel and the salvage and diving cost are covered by such Hull Policy. The cause of the sinking of the vessel was as a result of the perils of the sea and, to the extent applicable, crew negligence. All of the foregoing enumerated perils were insured against by Continental Insurance in the Hull policy.

29. Furthermore, pursuant to the terms of the P&I Policy, the vessel owner is entitled to recovery for the expenses related to the removal of the vessel because such wreck removal was compulsory. Dragados reasonably believed that the removal and salvage of the vessel was required by law and that the failure to do so would expose Dragados to liability imposed by law and was reasonably necessary to avoid legal consequences of the type reasonably contemplated by the Hull Policy and P&I Policy. In essence, Dragados, as a reasonable owner, concluded that the failure to salvage and remove the wrecked vessel would likely expose it to liability imposed by law sufficiently great in amount and the probability of the occurrence to justify the expense of removal. Therefore, the wreck removal costs, including but not limited to the salvage, diving cost and pollution abatement costs and expenses of pollution abatement containment and remediation are also covered by such P&I Policy.

30. In addition to having acknowledged the loss and the claim made by Dragados, Continental Insurance also arranged for a marine surveyor/claims adjustor to go to Mexico to survey the damage to the Vessel. Dragados made arrangements to meet with the Continental Insurance appointed claims adjuster and, although, Dragados was informed that the adjuster was going to go to the casualty site, the adjuster never appeared. None of the defendants ever informed Dragados that the adjuster was not going to survey the Vessel.

31. On April 16, 2019, Dragados submitted its formal Proof of Loss to Continental. On April 19, 2019, Continental Insurance denied coverage under the terms of the Hull policy on the basis that the Insurance Policies had been cancelled and that the effective date of cancellation was a date *prior to* the casualty loss of the Vessel on February 18, 2019. The response from the Continental Insurance claims specialist was based on:

    a. the allegation that "Endorsement No. 3 was issued on November 26, 2018 citing, "Effective October 22, 2018 it is hereby understood and agreed that this Policy is cancelled in its entirety for a Return Premium of (**$3,435.00**)."

    b. the allegation that "Endorsement No. 5 was issued on March 1, 2019 citing, "THIS ENDORSEMENT, EFFECTIVE October 22, 2018 forms a part of policy No. H0877499 of The Continental Insurance Company ISSUED TO Hugo Bastan/Dragados y Maniobras Maritimas de Tuxpan, S.A de C.V. Effective October 22, 2018 it is hereby understood and agreed that this Policy is cancelled in its entirety for a Return Premium of (**$50,541.14**)."

32. Plaintiffs allege that they were *never advised by any of the Defendants, in any form whatsoever*, of the supposed cancellation of the Insurance Policies *before the casualty loss*. The first notice received by the Plaintiffs of any alleged cancellation of the Insurance Policies came from Continental Insurance *after* the casualty loss and *after* the submission of the Proof of Loss to Continental. Furthermore, Plaintiffs *never requested* and *never authorized* the cancellation of the Insurance Policies. Dragados had been presented with premium statements/invoices and had fully paid all of the submitted invoices for the policy premiums for the Insurance Policies. The response from the Continental Insurance claims specialist reference that the Insurance Policies

were "cancelled for non-payment effective October 22, 2018 and premium returned." The same letter also reflected that Dragados received a "Return Premium" of $50,541.14. The Continental Insurance claims specialist did not indicate (i) that Dragados had agreed to, or requested, an early cancellation of the Insurance Policies, (ii) that Dragados had been advised that the coverage afforded by the Insurance Policies was being cancelled or (iii) that the claim presented by Dragados was being denied for any alleged violation of any warranty, condition, or provision the Insurance Policies. Moreover, the alleged "Return Premium" of $50,541.14 has never, in fact, been tendered or returned to Dragados by any of the Defendants.

33. Despite the alleged cancellation of the Insurance Policies, allegedly effective October 22, 2018, ABA Agency and Uhr filed a Property Loss Notice on February 23, 2019 advising Continental Insurance of the loss and impending claim. Continental Insurance acknowledged the receipt of the Property Loss Notice, set up a file and appointed a marine surveyor to travel to Mexico to survey the Vessel in its sunken condition. Such actions were undertaken by Defendants with knowledge that the Hull and P&I Policy had already been *supposedly* cancelled effective October 22, 2018. Yet none of the Defendants ever advised Dragados that its insurance had already been cancelled. Furthermore, after the *supposed* cancellation, Dragados continued to receive premium payment invoices from ABA Agency and Uhr and Dragados paid such invoices with the last payment being made on January 29, 2019. As stated above, Plaintiffs never received notice, oral or written, from any of the Defendants that the Insurance Policies were supposedly being cancelled for any reason whatsoever. Moreover, Plaintiffs never requested that any of the Insurance Polices be cancelled for any reason. To the contrary, Plaintiffs were receiving premium invoices and making policy premium payments for the Insurance Policies as late as January 29, 2019.

**Breach of Contract**. Plaintiffs reallege and incorporate Paragraphs 10 through 33 above.

34. Defendant Continental Insurance issued the Hull Policy and P&I Policy of marine insurance to Dragados. Said Hull Policy and P&I Policy constituted valid, enforceable contracts. Plaintiffs entered into these enforceable contracts with Continental Insurance and therefore constitute the proper parties to sue for breach of the contracts by Continental Insurance. The Plaintiffs performed pursuant to the terms of the Hull Policy and P&I Policy and paid all premium amounts which they were instructed to pay. Continental breached the contracts consisting of the Hull Policy and P&I Policy as hereafter set out. Continental's breach of the terms of the Hull Policy and P&I Policy have caused Plaintiffs' damages.

35. Pursuant to the terms of the Hull Policy and P&I Policy, Defendant Continental Insurance and its agents, RT Specialty and Pepper, were obligated to provide thirty (30) day written notice of cancellation of such policies (10) days in the event of non-payment of premium) to Plaintiffs. Plaintiffs never received written or oral notice of cancellation from any of the Defendants in this action. If Plaintiffs had received such notice, they would have immediately inquired as to the reason for the purported cancellation and would have either cured any default by Plaintiffs (which there was none) or obtained replacement insurance coverage. Furthermore, although Endorsement No. 4, dated September 12, 2018, was *supposedly* cancelled, effective October 22, 2018, Continental Insurance was prohibited from taking such action because of the

8

provisions of Section 551.052 of the Texas Insurance Code which prohibits cancellation, except for certain exceptions—none of which apply to this case.

36. The Hull Policy and P&I Policy provided insurance coverage to the Vessel. The Vessel suffered a total loss (a constructive total loss) during the term of such policies. The loss of the Vessel together with the sue and labor expenses and wreck removal expenses were covered by the terms of the Hull Policy and/or P&I Policy. Dragados made claim under the Hull Policy and P&I Policy. Continental Insurance denied the claim on the basis that the premiums for the Hull Policy and P&I Policy had not been paid. Plaintiffs assert that they timely paid every insurance premium invoice presented to them by any of the Defendants. Continental Insurance has had ample and adequate opportunity to investigate the Plaintiffs' claim and has denied the claim.

37. Pursuant to the terms of the Hull Policy and P&I Policy and by reason of Continental's failure to make payment of the claim, Continental Insurance is currently indebted to Dragados in the amount of Five Hundred Ninety Four Thousand Three Hundred Twenty Six and 12/100 Dollars ($594,326.12), with a deductible of Ten Thousand Dollars ($10,000.00), together with pre- and post-judgment interest and other damages as may be allowed by law.

**<u>Failure to Use Reasonable Diligence.</u>** Plaintiffs reallege and incorporate Paragraphs 10 through 37 above.

38. RT Specialty, ABA Agency and their respective employees, Pepper and Uhr, were "agents" under the provision of the Texas Insurance Code, including Tex. Ins. Code **§** 4001.003, 4001.051, 4001.009 and 21.21. The Defendants, jointly and severally, failed to use reasonable diligence to inform Plaintiffs that the Hull Policy and P&I Policy were being cancelled. Each of the Defendants was aware, or should have been aware, that such policies were cancelled by virtue of a purported endorsement to the policies and, in fact, each of the Defendants participated and ratified the cancellation endorsement and yet none of the Defendants provided any notice, written or oral, of such action to Plaintiffs. The Defendants were under a duty to keep Plaintiff fully informed of a non-renewal, lapse or cancellation of such policies. By failing to exercise reasonable diligence by advising Plaintiffs of those purported cancellation actions, each Defendant breached his/her/it's respective duty and such breach was a proximate and/or producing cause of the damages suffered by Plaintiff's. Futhermore, the failure of Continental Insurance , RT Specialty, Pepper and ABA Agency to exercise due diligence to discover, advise and disclose to Plaintiffs that on October 20, 2016 the Louisiana Department of Insurance had issued a Cease and Desist Order and Civil Fine against Uhr ordering him to cease and desist from acting as or holding himself out to be an insurance producer in the state of Louisiana which failure constitutes an unconscionable course of action on the part of such Defendants. This fact was either known, or in the exercise of reasonable diligence should have been known to Continental, ABA Agency, RT Specialty and Pepper. Such failure to know of such facts, and the Defendants additional failure of the Defendants to advise Dragados that Uhr was the subject of a cease and desist order or to advise Dragados to utilize the services of a reputable agent was constitutes negligence which was a proximate cause of the damages suffered by Dragados. The Insurance Policies on their face reflect the mailing address of Dragados to be

9

Morgan City, Louisiana.

39. The failure of RT Specialty, ABA Agency, Pepper and Uhr to exercise such reasonable diligence was a proximate cause, or alternatively a producing cause, of the damages suffered by Plaintiffs. The damages suffered by Dragados amount to Five Hundred Ninety-Four Thousand Three Hundred Twenty Six and 12/100 Dollars ($594,326.12), with a deductible of Ten Thousand Dollars ($10,000.00), together with pre- and post-judgment interest and other damages as may be allowed by law.

**Negligence.** Plaintiffs reallege and incorporate Paragraphs 10 through 39 above.

40. Pursuant to Section 551.052 of the Texas Insurance Code Continental Insurance was prohibited from cancelling the Hull Policy and P&I Policy after the 60th day following the issuance date of the Insurance Policies, except for certain exceptions—none of which apply to this case. Pursuant to Sections 551.053 and 551.055 of the Texas Insurance Code, Continental Insurance was obligated to provide written notice of cancellation of the Insurance Policies to Plaintiff and also provide the reason for such cancellation. In this case Continental Insurance did not provide any of such notices. Additionally, Defendants RT Specialty, ABA Agency, Pepper and Uhr, jointly and severally, failed to exercise reasonable due diligence and prudence by failing to notify Dragados that the Insurance Polices were in the process of being cancelled or had actually been cancelled. By remaining silent, such Defendants misrepresented the scope and continued existence of the coverage afforded by the Insurance Policies. Notice of cancellation was never provided to Plaintiffs by Continental Insurance or its licensed agents, RT Specialty and/or Pepper, or any of the other Defendants. Plaintiffs allege the failure of any of the Defendants to provide notice of cancellation of the Insurance Policies to Plaintiffs was a proximate cause, or, alternatively, a producing cause of Plaintiffs' damages and that Defendants are liable for the damages suffered by Plaintiffs for the insured value of the Vessel as well as the salvage costs of the Vessel, together with pre- and post-judgment interest and other damages as may be allowed by law.

41. Defendants RT Specialty, ABA Agency, Pepper and Uhr breached their duties and commitments to handle the Insurance Policies in conformance with the express and implied warranties, including statutorily imposed duties, in a reasonably prudent manner. Plaintiffs paid the premiums for the Insurance Policies and such Defendants knew that by paying such premiums, Plaintiffs expected that insurance coverage would be provided under the terms of the policies and that no action would be undertaken to jeopardize such coverage. To the extent that any of the Defendants caused, requested, participated or assisted in, the cancellation of the Insurance Polices prior to the loss without (i) first requesting permission from Plaintiffs and advising them of the reasons why such cancellation was being sought or (ii) providing notice of cancellation to Plaintiffs, such Defendants breached their duties as well as their express and implied warranties. Furthermore, such Defendants failed to (i) carry out their contractual obligations, (ii) perform their duties in a commercially reasonable manner and (iii) failed to carry out their duties as reasonably prudent agents. The foregoing described breaches, failures and violations committed by the Defendants were the proximate cause, or, alternatively, the producing cause, of the damages suffered by Plaintiffs. Plaintiffs allege that Defendants RT

Specialty, ABA Agency, Pepper and Uhr are liable for the damages suffered by Plaintiffs for the insured value of the Vessel as well as the salvage costs of the Vessel, together with pre- and post-judgment interest and other damages as may be allowed by law.

42. Plaintiffs assert that Defendants negligently made material false representations to Plaintiffs which induced Plaintiff to (i) purchase the Insurance Policies, (ii) continue to make payment of premiums for the Insurance Policies even though the premiums for the Insurance Policies had been fully paid by the end of August 2018 and (iii) continue to make payment of premiums for the Insurance Policies even though the policies were already supposedly cancelled. Plaintiffs assert that the misrepresentations were material and that a reasonable person would attach importance to and be induced to act or fail to act based on such information. Based on such reliance and as a proximate result of such misrepresentations, Plaintiffs have suffered damages in excess of the minimum jurisdictional limits of this court.

**Negligence/Conversion/Breach of Warranty.** Plaintiffs reallege and incorporate Paragraphs 10 through 42 above.

43. Dragados alleges that if it be shown that ABA Agency and/or Uhr and/or Underwriting Enterprises received the payment of the premiums as alleged above and thereafter failed to remit such funds to Continental Insurance to pay the premium or misapplied such payments or retained such payments, then such action constitutes negligence, or alternatively conversion/theft, or breach of implied or express warranty, or breach of contract, express or implied, which is an additional proximate cause, or producing cause, of the damages suffered by Dragados.

44. To the extent that the premiums payments sent by Dragados funds were converted, or diverted, or improperly retained by any of the Defendants for any use other than the payment of the premiums attributable to the Insurance Policies, then Dragados alleges that such premiums have been wrongfully converted and misspent by such Defendants and such action constitutes a proximate cause, or, alternatively, the producing cause, of the damages suffered by Plaintiffs.

**Breach of Duty of Good Faith and Fair Dealing.** Plaintiffs reallege and incorporate Paragraphs 10 through 44 above.

45. There was implied in (i) the written agreements (the Hull Policy and P&I Policy) and (ii) the relationship which existed between Dragados and Defendants a covenant and duty of good faith and fair dealing wherein each Defendant impliedly covenanted that it/he would, in good faith and in the exercise of fair dealing, deal with Dragados fairly and honestly and do nothing to impair, interfere with, hinder or potentially injure Dragados. Each Defendant had no reasonable basis for denying or delaying the payment of Dragados's claim or assisting in the denial of same. Furthermore, each Defendant knew, or should have known, that Dragados had fully paid the annual premium of the Insurance Policies and that there was no reasonable basis for agreeing to retroactively "cancel" the insurance coverage. Each Defendant knew, or should have known, that Dragados was entitled to receive notice of the cancellation of the Insurance

Policies, yet every Defendant failed to provide any notice of any putative cancellation until *after* the casualty loss and *after* the submission of the Proof of Loss. In failing to do so, each Defendant breached its duty of good faith and fair dealing. Each Defendant violated the provisions of Sections 551.053 and 551.055 of the Texas Insurance Code by failing to provide written notice of cancellation and the reasons therefore. Furthermore, Plaintiffs assert that Defendants made material false representations to Plaintiffs which induced Plaintiff to (i) purchase the Insurance Policies and (ii) continue to make payment of premiums for the Insurance Policies even though the premiums for the Insurance Policies had been fully paid by the end of August 2018. Plaintiffs assert that the misrepresentations were material and that a reasonable person would attach importance to and be induced to act or fail to act based on such information. Based on such reliance and as a proximate result of such misrepresentations, Plaintiffs have suffered damages in excess of the minimum jurisdictional limits of this court.

46. In addition to the breaches alleged above, the respective actions of the Defendants, included, but are not limited to, the following:

   a. The Defendants caused the Insurance Policies to be issued for a term of one year;
   b. The Defendants represented to Defendants that the Insurance Policies would be valid for a term of one year provided that the premiums were paid;
   c. In addition to the premium charged by Continental, Plaintiff was also requested to pay, and did pay, an additional amount of $16,145.54;
   d. After the loss, the Defendants fabricated a story to deny coverage to Plaintiffs by claiming that the insurance policies had been previously cancelled for non-payment of premiums, when, in fact, the premiums had been paid;
   e. Subsequent to the casualty loss, the Defendants prepared and disseminated false documents in an effort to support a claim of non-payment of premium and provide a basis to support the cancellation of the Insurance Policies;
   f. Subsequent to the casualty loss, the Defendants made false representations to Plaintiffs in an effort to conceal their actions and an effort to deny the legitimacy of Plaintiffs claim;
   g. The Defendants never tendered the return premium to Plaintiffs;
   h. The Defendants never provided notice of cancellation of the insurance to Plaintiffs as required by Sections 551.053 and 551.055 of the Texas Insurance Code.

47. As a proximate result of each Defendant's breach of its/his respective covenant of good faith and fair dealing, Dragados has suffered actual damages in an amount of the face value of the insurance policy, together with all other actual and consequential damages consisting of the loss of the Vessel, business income losses and other damages arising from Continental' wrongful refusal to pay the claim.

**Common Law Fraud Claims.** Plaintiffs reallege and incorporate Paragraphs 10 through 47 above.

48. Upon information and belief, Plaintiffs allege that the Defendants have conspired

to avoid the payment of the claim made by Plaintiffs by retroactively fabricating the wrongful cancellation of the Insurance Policies and by misrepresenting facts relevant to the Insurance Policies and coverage related to same. In this regard, Plaintiffs allege that ABA, Uhr, RT Specialty, Pepper and Underwriting Enterprises either (i) failed to properly bind coverage *vis a vis* Continental Insurance or (ii) failed to timely remit and pay the premiums due under the Insurance Policies. Upon learning of the casualty loss, those Defendants then conspired among themselves and with Continental Insurance to conceal the truth from Plaintiffs and then fabricated the excuse that the Insurance Policies were cancelled for non-payment of premiums, when, in fact, the full amount of billed premiums had been remitted by Plaintiffs. Ignoring their statutory and common law duties, the Defendants embarked on a course of action of deception in order to trick Plaintiffs into believing that the insurance premiums had not been paid and that the Insurance Policies had been properly cancelled. As a proximate result of the Defendants' fraudulent actions, the Plaintiffs have suffered, and will continue to suffer, damages consisting of the loss of the Vessel, the cost of salvage and repair, out of pocket expenses necessary to maintain the Vessel. Plaintiffs will show that the conduct of the Defendants as described above was fraudulent and amounted to common law fraud. The damages suffered by Plaintiff exceed the minimum jurisdictional limits of this court and consist, in part, of the un-reimbursed loss of the Vessel.

49. Plaintiffs will further show that the conduct of the Defendants as described above was fraudulent and malicious and that the Defendants false representations were made with actual awareness of their falsity or that the representations made by Defendants were material misrepresentations and promises recklessly without any knowledge of their truth or falsity, without any intent to comply with the promises and as a positive assertion and for the purposes of inducing the Plaintiff to believe that the Insurance Policies were in full force and effect, to continue to make additional payments for premiums that were not even required to be paid and to accept the fact that eth Insurance Policies had been cancelled for non-payment of premium, when such premiums had been paid. As a result, the Plaintiffs are entitled to recover exemplary damages to deter fraudulent conduct by others in the Defendants' situation. In this connection, Plaintiffs will show that as a result of the Defendants' conduct, the Plaintiff has suffered losses of time and other expenses, including attorney's fees incurred in the investigation and prosecution of this action. Accordingly, Plaintiffs request that exemplary damages be awarded against the Defendants in a sum within the jurisdictional limits of this court.

**Insurance Code Chapter 541- Unfair Methods**. Each Defendant, as a "Person" under the provisions of Section 541.002(2) of the Texas Insurance Code, has violated Chapter 541 of the Texas Insurance Code by (i) misrepresenting, in violation of Section 541.051, the terms and coverage of Dragados' insurance policies with Continental, (ii) engaging in unfair settlement practices in violation of Section 541.060, (iii) misrepresenting facts and matters related to the Insurance Policies in violation of Section 541.061, (iv) mishandling the insurance relationship which they were charged with handling correctly and (v) violating their common law duty of good faith and fair dealing with Plaintiffs. These violations of Chapter 541 have caused damages to Dragados. These damages include, but are not limited to, Dragados's policy claims and consequential damages resulting from Continental's wrongful conduct and delay. Plaintiffs are also entitled to additional damages pursuant to Chapter 541 because each Defendant has violated

13

this statute knowingly.

**Insurance Code Chapter 542 - Wrongful Delay**. Plaintiffs reallege and incorporate Paragraphs 10 through 37 above. Continental Insurance has violated Chapter 542 of the Texas Insurance Code by engaging in unfair claim settlement practices in violation of Section 542.058. The other Defendants have assisted and conspired with Continental Insurance in violating the provisions of Section 542.058. These violations of Chapter 542 have caused damages to Plaintiffs. The violation of said statute is a form of strict liability against Continental Insurance pursuant to Section 542.060 and, as such, Plaintiffs are entitled to 18 percent per annum interest on the unpaid policy proceeds pursuant to statute, together with reasonable attorney's fees.

**Suit for Declaratory Judgment.** Plaintiffs reallege and incorporate Paragraphs 8 through 49 above.

50. Plaintiffs bring this action to secure a determination of its rights and remedies under the policies issued by Continental. Plaintiffs allege that the policy provides coverage for the losses suffered by Continental, that none of the actions undertaken by Plaintiffs had the effect of voiding or nullifying the policy, and that the provisions of Article 6.14 of the Texas Insurance Code preclude and supersede the attempts made by Continental Insurance to cancel or void the policy.

51. Plaintiffs request that this court determine the coverage and effect of the policies under the set of facts present in this case and that this court additionally award Plaintiffs their reasonable attorney's fees.

52. **Exemplary Damages**. Plaintiffs would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly" and that Defendant Continental Insurance had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions. Plaintiffs further avers that such acts, practices, and/or omissions were committed "intentionally" in that each Defendant specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness. Alternatively, Plaintiffs would show that the acts and omissions of the Defendants herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendants at the expense of Plaintiffs. In order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiffs hereby requests the imposition of punitive and exemplary damages.

53. **Attorney's Fees**. Plaintiffs have been required to retain counsel in order to collect under its insurance contracts with Continental. As such, Plaintiffs have incurred and will continue to incur reasonable and necessary attorney's fees and costs in prosecuting and defending this matter. Defendants are liable to Plaintiffs for these attorney's fees pursuant to Chapter 38.001 *et al* of the Civil Practice and Remedies Code and Chapters 541 and 542 of the Texas Insurance Code.

**PRAYER**

For these reasons, Plaintiffs pray that the Defendants be cited to appear and answer, and that Plaintiffs have judgment against the Defendants, jointly and severally, for the following:
- (a) Actual and consequential damages;
- (b) Statutory penalties and damages;
- (c) Punitive and additional damages;
- (c) Reasonable and necessary attorney's fees;
- (e) Prejudgment and post-judgment interest as allowed by law;
- (f) Costs of suit; and
- (g) All other relief, in law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

By: /s/ *Dennis Sanchez*
Dennis Sanchez
State Bar No. 17569600
Southern Dist of Tx Admission No. 1594

SANCHEZ WHITTINGTON WOOD
& OROZCO, LLC
3505 Boca Chica Blvd. Suite 100
Brownsville, Texas 78521
(956) 546-3731 - Telephone
(956) 546-3765 and/or 546-3766 - Facsimile
**ATTORNEYS FOR DRAGADOS**